NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZAKY TADROS,<br><br>                          Plaintiff,<br><br>v.<br><br>BRIAN P. STACK, in both his individual and official capacities, MARTIN MARTINETTI, in both his individual and official capacity, CITY OF UNION CITY, LUCIO P. FERNANDEZ, in both his individual and official capacities, MARYURY A. MARTINETTI, in both her individual and official capacities, CELIN J. VALDIVIA, in both his individual and official capacities, WENDY A. GRULLON, in both her individual and official capacities, CORRADO BELGIOVINE, in both his individual and official capacities, and THE ALEXANDER GROUP NJ, LLC, in both its individual and official capacities,<br><br>                          Defendants. | Civil Action No.: 20-12546<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

This matter comes before the Court by way of defendants'[1] City of Union City ("Union City"), Corrado Belgiovine ("Belgiovine"), and Alexander Group NJ, LLC's ("Alexander Group") (collectively, "Defendants") motions to dismiss plaintiff Zaky Tadros's ("Plaintiff") Complaint (ECF No. 1, "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  ECF Nos. 17, 34.

---

[1] The Court notes that Union City, Belgiovine, and Alexander Group are the only remaining Defendants in the case following stipulations of dismissal between the parties as to the prior Defendants.

[2] Pursuant to Fed. R. Civ. P. 12(b), a motion to dismiss under Rule 12(b)(6) must be filed before a responsive pleading.  In this case, Belgiovine and Alexander Group NJ, LLC did not file their motion to dismiss before they filed their answer, which is considered a responsive pleading.  ECF

The Court has considered the submissions made in support of and in opposition to the motions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants Defendants' motions to dismiss.

## II.     BACKGROUND

### a. Factual Background

This action arises out of Plaintiff's claim that Defendants divested Plaintiff's ownership interest in a ten-unit apartment building, located at 130 40th Street, Union City, New Jersey (the "Property"), pursuant to the Multifamily Housing Preservation and Receivership Act, N.J.S.A. § 2A:42-114 *et seq*. ("MHPRA"), without just compensation in violation of his rights under the Takings Clause of the Fifth Amendment to the U.S. Constitution, incorporated against the States via the Fourteenth Amendment to the U.S. Constitution. The Court notes that, under the MHPRA, municipal governments, like Union City, can seek appointment by the New Jersey Superior Court of a temporary receiver to manage a building's operations if the building is found to be in violation of local health and safety codes. N.J.S.A. § 2A:42-117. Once awarded a receivership, the receiver is then to abate the "conditions that are a serious threat to the . . . health or safety of the building's tenants." *Id*. A receivership will subsequently be terminated, and possession and control of the building will be returned to the titled owner, once the "conditions that were the grounds for the [abatement] and all other code violations have been . . . corrected." *Id.* § 2A:42-140.

---

Nos. 34 (motion to dismiss), 15 (answer). *Dukes v. Lancer Ins. Co.*, 390 F. App'x 159, 163, n.4 (3d Cir. 2010). Thus, the Court will "treat the untimely post-answer motion to dismiss under Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings." *Marchetta v. City of Bayonne, N.J.*, No. 12-2696, 2015 WL 4487725, at *1, n.2 (D.N.J. July 23, 2015). The Court, however, "will evaluate Defendants' motion using the same standards for dismissal that apply under Rule 12(b)(6)." *Id.*

In 2014, Plaintiff, the fee simple owner and landlord of the Property since 1999 (Compl. at ¶ 33), received complaints from tenants and inquiries from Defendants concerning the habitability and safety of the Property. *Id.* at ¶¶ 4, 45–46. Subsequently, in the Summer of 2016, after Defendants found the Property to be in violation of local health and safety codes, Defendants sought and were awarded a receivership of the Property under the MHPRA by the New Jersey Superior Court. *Id.* at ¶¶ 4, 45–49. Plaintiff appealed the Superior Court's order granting the receivership, which the New Jersey Appellate Division denied on June 9, 2020. *See* ECF No. 17, Ex. F (*City of Union v. Tadros*, Docket No. A-3681-17T3 (App. Div. June 9, 2020)). Under the receivership, Defendants sought to implement necessary changes to place the Property in compliance with local health and safety codes. *Id.* at ¶ 48. For instance, Defendants represented to the New Jersey Superior Court that they intended to, among other things, replace all entry doors in each of the Property's ten units and install a steel pipe fire sprinkler system throughout the entire Property. *Id.* at ¶ 66. Plaintiff alleges that, in the receivership proceedings, Defendants estimated that these abatements would be completed within roughly nine months of the date in which the receivership commenced. *Id.* at ¶ 68.

Plaintiff alleges that Defendants ultimately "took actual, physical possession and control of the Property" under the receivership on February 15, 2017, which remains ongoing as of the filing of the Complaint, and that, since then, he "has been totally and absolutely divested of his rights in the Property." *Id.* at ¶¶ 52–61. Further, Plaintiff alleges that he has "realized no income or distributions from the Property," including rent payments, during the course of the receivership, but that he has nevertheless "been forced to pay, out of his personal funds, the mortgage payments and property taxes for the Property." *Id.* Finally, as of the filing of the Complaint, Plaintiff alleges

3

that Defendants' abatement plan is indefinitely suspended because construction officials are refusing to provide the City with necessary building permits. *Id.* at ¶ 7.

### b. Procedural Background

On September 10, 2020, Plaintiff brought this one count Complaint against Defendants under 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants violated his rights under the Takings Clause of the Fifth Amendment to the U.S. Constitution, incorporated against the States via the Fourteenth Amendment to the U.S. Constitution, by, individually and as part of a conspiracy, acting under color of law to impose a "physical invasion on and occupation of Plaintiff's Property" without just compensation. *Id.* at ¶¶ 147–155. Following Defendants' motions to dismiss pursuant to Rule 12(b)(6) (ECF Nos. 17, 34), Plaintiff filed oppositions (ECF Nos. 27, 38), and Defendants replied (ECF Nos. 33, 39).

## III.  LEGAL STANDARD

### a. Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Defendants argue that Plaintiff's takings claim warrants dismissal because, among other reasons, it is barred by the statute of limitations. ECF No. 17 at 19; ECF No. 34 at 5.

"The Takings Clause of the Fifth Amendment to the United States Constitution . . . provides that government shall not take private property for public use without just compensation." *Umdasch Real Est. USA, Ltd. v. Borough of Wallington*, No. 20-16346, 2021 WL 1050230, at *2 (D.N.J. Mar. 19, 2021) (citations omitted). "Real property, personal property, and intangible property may each be the subject of a takings claim." *Gen. Category Scallop Fishermen v. Sec'y of U.S. Dep't of Com.*, 720 F. Supp. 2d 564, 576 (D.N.J. 2010), *aff'd sub nom.*, 635 F.3d 106 (3d Cir. 2011). While "time is indeed a factor" in determining when, like here, a temporary physical invasion without just compensation rises to the level of a taking, such invasions "should be assessed by a case-specific factual inquiry." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012) (citations omitted); *see also Memmer v. United States*, 150 Fed. Cl. 706, 752 (2020), *reconsideration denied*, No. 14-135L, 2021 WL 2010495 (Fed. Cl. May 20, 2021) (government's issuance of an easement over landowners' private properties for a period of several months constituted a "temporary taking" requiring just compensation).

Because Plaintiff brings his takings claim under Section 1983, the statute of limitations for personal injury actions in the state in which his claim arose governs. *Keys v. U.S. Dep't of Just.*, 285 F. App'x 841, 842 (3d Cir. 2008) (a state's statute of limitations for personal injury claims governs Section 1983 actions). Thus, as Plaintiff's takings claim arose in New Jersey, the statute of limitations is two years (*Igleasias ex rel. power of Iglesias v. Borough of Cliffside Park Plan. Bd.*, No. 12-07612, 2015 WL 2079375, at *3, n.4 (D.N.J. May 4, 2015) ("[T]he statute of limitations for a takings claim is the period that New Jersey applies in personal injury cases: two

5

years.")), and the clock started to run on the date in which he knew or had reason to know of a potential deprivation of his constitutional rights. *Silver Enterprises, Inc. v. Twp. of Freehold*, No. 07-2322, 2008 WL 4068156, at *3 (D.N.J. Aug. 22, 2008) (citing *Ormsby v. Luzerne County Dep't of Pub. Welfare*, 149 Fed. Appx. 60, 62 (3d Cir. 2005)) (a plaintiff's takings claim accrues "when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action").

Here, Plaintiff alleges that Defendants "took actual, physical possession and control of the Property" on February 15, 2017, and that, since then, he "has been totally and absolutely divested of his rights in the Property and has realized no income or distributions from the Property." Compl. at ¶¶ 52–61. Thus, Plaintiff's claim accrued at that time as he had "reason to know" that Defendants' receivership—even if only for an estimated period of nine months—constituted a potential taking. *See Taverna v. Palmer Twp.*, No. 20-0812, 2020 WL 5554387, at *6 (E.D. Pa. Sept. 16, 2020) (holding that the plaintiff's takings claim was time barred as he "knew, or should have known, about. . . the [government] ordinance" giving rise his claim on the date the government passed the ordinance—over two years prior to the filing of the complaint). In fact, Plaintiff's claim may have accrued as far back as 2016, when, during Plaintiff's appeal of the receivership order, he acknowledged that the receivership constituted a "bad faith taking without compensation." ECF No. 17 at 5.

Plaintiff, however, asserts that his claim accrued in August 2020—well within the two-year statute of limitations period—because, at that time, he first learned of Defendants' intent to extend the receivership indefinitely. ECF No. 27 at 8. The Court disagrees for a number of reasons. First, the Court does not consider these allegations as they were made for the first time in Plaintiff's opposition brief. *Alfred v. Atl. City Police Dep't SWAT*, No. 14-7536, 2015 WL

6

4251076, at *3, n.7 (D.N.J. July 13, 2015) ("Because Plaintiff's opposition papers cannot amend her Complaint, these allegations are not part of the pleadings and the Court does not consider them for purposes of addressing the Motion to Dismiss."). Moreover, given that the Complaint alleges that Plaintiff's claim accrued on February 15, 2017, he is estopped from arguing otherwise, including in his opposition brief, without amending his pleadings. *Zany Toys, LLC v. Pearl Enterprises, LLC*, No. CIV.A. 13-5262 JAP, 2015 WL 404644, at *7 (D.N.J. Jan. 28, 2015) (parties may be judicially estopped from arguing a proposition when "such an argument directly contradicts the position [they] took" previously in the litigation). In addition, even accepting these allegations as true, Plaintiff still does not contest the fact that, on February 15, 2017, he was on notice of Defendants' physical interference with the Property without just compensation, *i.e.*, a potential takings claim, even if only for an estimated period of nine months. *See Nat'l Amusements, Inc. v. Borough of Palmyra*, 843 F. Supp. 2d 538, 545 (D.N.J. 2012), *aff'd*, 716 F.3d 57 (3d Cir. 2013) (recognizing potential viability of a "temporary takings claim").

Finally, insofar as Plaintiff argues that his claim is tolled under the "continuing violations doctrine" because Defendants' alleged interference with the Property continues as of the filing of the Complaint, his contention is without merit. ECF No. 27 at 9. "Under the continuing violation doctrine, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 384 (D.N.J. 2018) (citations omitted). Therefore, the doctrine focuses on the "continuing" acts of the defendants, and not the "continuing. . . ill effects from an original violation." *Falchini v. United States*, No. 12-108, 2015 WL 1235067, at *3 (W.D. Pa. Mar. 17, 2015) (noting that the continuing violations doctrine is almost exclusively applied in federal court in employment discrimination claims). Here, as with most takings claims, the

continuing violations doctrine is inapplicable as this case involves a single act—Defendants' taking possession and control of the Property on February 15, 2017—with the continuing consequence of divesting Plaintiff of his right to use and enjoy the Property.[3] *See, e.g., Cowell v. Palmer Twp.*, 263 F.3d 286, 295 (3d Cir. 2001) (continuing violations doctrine could not be applied to revive claim involving defendants' alleged interference in plaintiffs' land development plans); *287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 324 (3d Cir.1996) (affirming the district court's dismissal of the plaintiffs' takings claim filed in 1994 and declining to apply the continuing violations doctrine because "[t]he Township ha[d] not committed an affirmative act since 1985"). Put differently, contrary to Plaintiff's assertion, Plaintiff has failed to show that Defendants have taken the Property "by a continuing process," as he concedes that Defendants have already "totally and absolutely divested [his] rights in the Property."[4] Compl. at ¶ 61.

---

[3] Plaintiff also claims that the "equitable tolling" doctrine applies, which tolls the statute of limitations when a defendant misleads a plaintiff regarding the plaintiff's claim, because Defendants allegedly concealed facts about the receivership's duration until August 2020. ECF No. 27 at 10. However, for the reasons discussed above, given that Plaintiff was aware of his takings claim on February 15, 2017, irrespective of the information that he supposedly learned from Defendants in August 2020, equitable tolling is inapplicable.

[4] Defendants also assert that the Complaint warrants dismissal because Plaintiff has failed to state his takings claim on the merits. In particular, Defendants argue that because they declared the Property a nuisance under the receivership, it was lawful for them to direct Plaintiff to take all reasonable steps to abate the nuisance without providing him any compensation. Plaintiff, on the other hand, in his notice of supplemental authority (ECF No. 52) concerning the Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), avers that any time the government "impairs a property owner's right to exclude, a per se taking has occurred." ECF No. 52 at 2. According to the Supreme Court in *Hassid*, however, "the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place." *Id*. at 2079.

Accordingly, Plaintiff's Complaint is time barred as his claim accrued on February 15, 2017—roughly three and a half years before he filed the Complaint—and therefore warrants dismissal under Rule 12(b)(6).[5]

---

[5] The Complaint is also precluded under the Entire Controversy and Collateral Estoppel Doctrines, and is barred under the *Rooker Feldman* Doctrine. ECF No. 17-1 at 23; ECF No. 34-2 at 6.

The Entire Controversy Doctrine, codified under N.J. Ct. R. 430A, precludes a plaintiff's federal action where: (1) "the judgment in the prior action [is] valid, final, and on the merits"; (2) "the parties in the action [are] identical or in privity with those in the prior action"; and (3) "the [] action [] grow[s] out of the same transaction or occurrence as the claim in the earlier one." *Rodrigues v. Unifund CCR, LLC*, 690 F. App'x 799, 802 (3d Cir. 2017) (citations omitted). Here, the New Jersey Appellate Division affirmed the lower court's issuance of the receivership order (ECF No. 17, Ex. F), and Plaintiff has not informed the Court that he filed a petition for certification with the New Jersey Supreme Court to challenge the Appellate Division's affirmance. As such, the judgment became final "when the time for filing the petition expired." *Rodriguez v. New Jersey*, No. 18-12570, 2019 WL 2193498, at *2 (D.N.J. May 20, 2019) ("[B]ecause [the party] did not appeal to the State's highest court, his judgment became final . . . when his time for seeking review with the State's highest court expired.") (citations omitted). Further, Union City and Plaintiff were parties in the receivership action, and this action arises out of the same transaction or occurrence as the receivership action—Plaintiff's divested ownership rights in the Property. Finally, to the extent that Belgiovine and Alexander Group were not parties in the receivership action, and, thus, the Entire Controversy Doctrine does not apply to them, Plaintiff is nevertheless precluded under the Collateral Estoppel Doctrine from arguing that the receivership constituted a taking for the same reasons as discussed above. *Begum v. Harrison*, No. 20-13321, 2021 WL 1748102, at *4 (D.N.J. May 3, 2021) ("[C]ollateral estoppel bars . . . re-litigation of issues . . . if, in a prior suit, the issue was "(1) actually litigated; (2) previously determined; and (3) necessary to the previous judgment.").

The *Rooker-Feldman* Doctrine "strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments." *Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 236196, at *4 (D.N.J. May 31, 2017) (citations omitted). Specifically, the doctrine applies in "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, (i) Plaintiff "lost" in the state court receivership action, (ii) Plaintiff claims of an injury, the alleged taking, caused by the state court judgment, the receivership order, (iii) the receivership action concluded before Plaintiff filed this action, and (iv) Plaintiff seeks to overturn the receivership order, the state court judgment, in the Complaint. *See generally* Compl. Accordingly, "[t]his type of action is exactly what *Rooker-Feldman* is meant to prevent: an attempt to invalidate the [state court] final judgment." *Martinez v. Bank of Am., N.A.*, No. 15-8926, 2016 WL 1135441, at *4 (D.N.J. Mar. 22, 2016).

**V.     CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 17, 34), are granted and the Complaint is dismissed without prejudice.  An appropriate Order accompanies this Opinion.

**DATED**:  August 30, 2021

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**